Good afternoon, Your Honors. Christopher Driscoll on behalf of Plaintiff and Appellant Tammy Cameron. I will proceed. This is a Fourth Amendment case, so very common, simple law. We're determining whether or not there was probable cause to have my client, Tammy Cameron, arrested. To do that, there have to be reasonably trustworthy, objective facts leading a reasonably prudent officer to believe there was cause to have her arrested. There was an initial investigation performed by an Officer Wilson. There was a perpetrator identified as Tammy Garrison, not Tammy Cameron. Okay? Eventually... Whether or not there was probable cause to have her arrested hinges entirely on whether or not Officer Brown had any basis to place Tammy Cameron, not Tammy Garrison, within a lineup. There clearly was not. Wait a minute. Are you saying you have to have a... Whoever makes up the six-pack has to have a basis for each photo that's placed in the six-pack? Not each person, but there has to be a reason to place that suspect within the six-pack. If I were to prepare a six-pack... What do you mean by a reason? I mean, you know, it's not like probable cause. Isn't a hunch good enough to put somebody in a six-pack? But there wasn't even a hunch yet. Speculation is good enough. Well, let's just say we put... You got ten photos here, and I said, that looks like a suspect. I'll put it in the six-pack. Isn't that good enough? If we put a six-pack of the three judicial... I mean, what standard is there for including a photo in a six-pack? I don't think there's any standard. There's no support for probable cause if you place someone... You don't need probable cause. That's what I'm saying. Do you need to put a photo in a six-pack? But it's a meaningless identification. Well, that's the way to look at it. That's a different question. I mean, first of all, my understanding is that you have... This is... This issue, the identification, is only one of several things going to the probable cause. Well, it's really the only thing. There is no... I don't think so. I think you're... At least if I were you, I wouldn't be saying that. It seems to me to be rather important that the description doesn't fit her, i.e., by six inches. That's correct. Well, that's something different, right? And it also seems to be important that her name doesn't appear anywhere in any of the reports. Absolutely. Right? That seems significant to the probable cause. Absolutely. All right. So therefore, I wouldn't say what you were saying. Go ahead. Keep going. So the officer never even received Tammy Cameron's name in the first place. He says he has no independent recollection of ever receiving her name. Well, I thought he said vaguely. Somebody told her to me. Well, I'm talking about his deposition. What he created after the fact with the deposition where he's suddenly remembering that one of three people provided his name, that's something totally different. But deposition, he says, I have no independent recollection of what I did. I have no recollection of being told Tammy Cameron's name. And there's no report about it. And there's absolutely no report. And he testifies, the district attorney testifies, the original investigating officer testifies, his partner testifies. They all testify. If this were actually to have occurred and they were to have been provided with that name, Tammy Cameron, that absolutely would be in a report. And so that is a, all of that is a reasonable basis to doubt the veracity of what he says about how Garrison gets to Cameron, right? Absolutely. And aside from the fact that he says he doesn't even remember it in the first place. Somewhere, also, somewhere he got the name Tame, didn't he? T-A-M-E as opposed to. T-A-M-E? Is that right? Correct. Where did he get that name? He got it when he randomly grabbed a picture of my client from the ID database. And it came up as T-A-M-E? Correct. And was the name Tame associated with that picture when he got it? Yes. And in fact, that name Tammy, when the six-pack was conducted, there was one name on that six-pack, Tammy, and it was underneath the picture of my client. Did you ever figure out where that ID number that's to the left of the name comes from, what that signifies? I have not. Okay. That was also right below her picture, right? Correct. And of course, I pointed to a California case that indicates that if you are putting the name of the person that you're identifying and the suspect knows the name of the person that you're trying to identify, Tammy and Tammy, as we have here, that's absolutely improper. That's the Carlos case. All right. Go ahead. Okay. So am I responding to a question right now? No, you're not. You're giving your argument. So there's two issues. The officer admits that he has no recollection of ever being provided with that name, and if he were to have been provided with that name, it would have been in a report by him that never happened. There's no evidence supporting the fact that my client was ever involved in a crime whatsoever. There were some mentions somewhere of the fact that Yorba and somebody else also identified her. Okay. At what point and in what context? That is during the course of the litigation, not during the course of the investigation. In other words, after the lawsuit got filed. Yes. Therefore, it would be irrelevant. Further, when those, quote-unquote, identifications occurred, the picture of my client, Tammy Cameron, was circled on the six-pack as well. So it's entirely meaningless. So before she was arrested and charged, the only person who had picked her out was the one person? Correct. Picked her out of the photo spread. And it's even questionable whether or not he picked her out. Fair enough. But I mean, there's not a second and a third person. At most, there's one. Right. He said he made it absolutely clear that he was unable to make an identification, and he was told to pick anyway. Well, what was he told? He was told exactly. Where is this in his deposition? Do you know what he was told exactly? I can locate that for Your Honor, just one moment. It was told something like... Do your best. Do your best. Do your best. Well, that was later on during the course of the deposition when defense counsel had the case. However, had the deposition... Excuse me. Well, what he actually said, according to this, is he said, do your best. Okay. Pick one. Okay. He did say he said pick one. That is one statement. But the gentleman also made the statement that he made it absolutely, and that is a quote of him, absolutely clear that he was unable to make the identification and that he was told to choose one anyway. And that is not an identification. He was told what? I'm sorry. He was... He told the officer absolutely that he was unable to make the identification, and he was told anyway to make one. If you want to reserve some time, you may do that. I'm sorry, Your Honor. I can't hear. I said if you would like to reserve some time, you may do that. Yes, Your Honor. Thank you. Thank you. May it please the Court, Raymond Sakai on behalf of Defendants County of Los Angeles and Deputy Lauren Brown. As my colleague has outlined this case, it is, as defendants see it, it breaks down into two issues, whether or not there was a constitutional violation, whether or not there was probable cause for seeking the warrant, and if there wasn't, whether or not there was qualified immunity for our officer, our deputy, Deputy Brown's mistake. All right. What was the probable cause? The probable cause was based on the investigation following Mr. Gallo, the victim's report of the crime in December of 2007. And the probable cause was first based on Deputy Wilson's initial investigation, which included the interview of the victim and the interview of the witnesses they could locate. Deputy Wilson, that was his only involvement in this case. He handed it off to Defendant Deputy Brown, who was a station detective, and Deputy Brown conducted further investigation. Deputy Brown's investigation... You don't have to go through the whole tsunami. What was produced from all this investigation that amounts to probable cause? It was identification of plaintiffs. Identification from what, the six-pack? It was identification from the six-pack, and it was also... In Deputy Brown's recollection, it was after he interviewed the three witnesses. All right. And this is in the declaration, not in a deposition. Is that right? It's in his deposition also. He states... Where? Well, the question is, because of all the circumstances, I think the plaintiff's position is that it was a suggestive circumstance that led to the identification. Overly suggestive, right? Because of several factors. Can you refute those factors? Sure. I don't want to ignore Judge Berzon's question. All right. He said, he doesn't recall which one of them had given me that last name. When was it given the name? Sometime during my investigation. Where were you given? I have no idea. What was the basis for that person? He has no idea. He wrote a report. He didn't put this in it. I mean, do you think there's not at least a contested fact as to whether he actually ever got this name from somebody? No, not based on the record. He doesn't know who it is. He doesn't know where it is. He didn't put it in his report. So you're saying that no reasonable jury could find that he made that up when it's not in a report and he can't remember where he got it and all that? Not based on the record, because what we have is a Deputy Brown statement that he interviewed these three individuals. And one of these three individuals gave him the name of Tammy Cameron, who was also known as Tammy Garrison. And after he conducted that... Wasn't there testimony that if that had happened from somebody else in the department, that if he'd actually been given the name Cameron, that that would have been expected to be in a report, which it wasn't? Wasn't there testimony like that, yes or no? Yes. Okay. So isn't that enough to doubt the veracity of what he says about being told that? No, because... The policy was, the practice would be to put it in a report. He didn't put it in a report. He can't remember who told him. You're saying that's not enough to doubt somebody's veracity? Well, Deputy Brown also said something else. He also said that that information may be in his notes. Was it? Well, he doesn't know, because of the retention policy. Fine. So that's no proof. So that just washes. And he didn't say it was in his notes. He said it might be in his notes. It might be in his notes. I don't have notes, so that doesn't get you anywhere. And we have other factors. So back to this ID thing, though. So let's say that a robbery is committed by somebody who's identified as being 6'6", and their name is Christopher Driscoll. And so somebody goes and finds that there's a Christopher Driscoll in police records, but he's 5'2". Okay. So, well, it's Christopher Driscoll. Let's put him in the photo spread. And a witness picks him out. Is that probable cause? Yes, I think it is. Seriously? So isn't probable cause based on the entire array of facts, not just on the one that you want to pull out? Well, it is. But then often, as in police procedures, identifications aren't accurate. For instance, the suspect could be Raymond Sakai, and they could say, I am 6'2", or 195 pounds. There's a big difference between a 5'1 person and a 5'7 person, or whatever the 6-inch disparity was here. There's a big difference. You're saying that we just ignore that? We just look at the fact that the face is the same and we ignore all of the other differences? Probable cause is supposed to be based on the entirety of the facts, not just on the ones that you want to pull out. I agree, Judge Canale. And that is just one factor. The other factors are the descriptions that were corroborated by the other witnesses. When were they corroborated? What do you mean when they were corroborated? Age, race, general appearance. Okay. So every blonde, Caucasian, 40-year-old woman is a suspect? No, but then when you put all, you get the totality of the circumstances, and you get the information about Tammy Garrison, and how she's also known as Tammy Cameron, and you run her on lachrys, and you put her in a six-pack, and the victim... Isn't the most likely thing that occurred here, which on this record a jury could conclude, that he just glitched out when he was looking up the database and he substituted Cameron for Garrison? That is a possibility. Let's just say that is a possibility that he blew it. He just, for some reason, he had a mental lapse, and he thought Garrison was Cameron. Well, what we have is negligence. And based on the record developed by the appellees in the court, that's what they're hanging their hat on. And what's wrong with that? It's not probable cause, whether it's negligence or anything else. It's objectively not probable cause. Sure, but this is a 1983 case. Right. So 1983, in order to get 1983 liability, it needs to be something more than negligence. Why? If it's probable cause? Well, for instance... And if there's an actual lack of objective probable cause, why does it matter why? Well, for instance, just because, you know, by analogy, there is a doctor in prison, and the patient happens to be an inmate, and the doctor is a state actor, and he's negligent, it doesn't transform that into a... That's a different standard. That requires deliberate indifference. Probable cause is based on what a reasonable officer objectively would believe. It's a different, bad analogy. And then if we also talk about reasonableness, we could also talk about reasonableness in the terms of qualified immunity. And as the record is developed, plaintiff or appellees have not carried the burden to establish that the law was clearly established in this specific factual context. As the courts have noted, that in the Fourth Amendment context, because law enforcement is a hard job... Well, let's suppose my hypothetical is what the jury believed, i.e., he just glitched down. He said he just, for some reason, he had a mental lapse and he looked for the wrong person. That wouldn't be an unreasonable thing to do? If you're talking about a reasonable person who's trying to arrest somebody? Not in this situation and based on the totality of the circumstances, because what we have is a plaintiff... And then we have the additional fact of the circumstances of the six-pack, which has this name underneath, right? I don't know if that would be enough by itself to make it not probable cause, but when you have an otherwise very weak situation and you have a person saying, I don't really know who it is, and then you have this name underneath, which certainly is some indication that this is the person you're supposed to be looking for, and then you're told to do your best, which you would presumably mean to say pick somebody, because that is what he understood it to mean, the closest person, why wouldn't you pick the person whose name was under there? Well, first of all, all of the six-packs created by the Los Angeles County Sheriff's Department have a name on the bottom, and as a court... Yeah, but they had the actual person. This one didn't have the actual person. They had somebody else, right? And he was, but so therefore, the subject suggestiveness wouldn't necessarily override the fact that he saw the right person. But here, he didn't see the right person. She actually wasn't there. Well, that's not what we'll take these one by one. As to the pushiness or the alleged pushiness of Detective Brown's identification, that's not supported by the record. If we could direct the Court to Mr. Gallo's deposition, it's at Defendant's Supplemental Exhibit of Record, page 82, lines 3 through 16. And without reading it to the Court, it essentially says he was never told that he had to pick and that all the conflict he had about maybe this wasn't the right person was internal. There's no evidence that Deputy Brown knew that the victim had any misgivings. And if we go to... Well, wait a minute. Did he say, I wasn't sure at first, and I told him that? And what Deputy Brown said was, do your best. Do your best. And what does do your best mean? It means what... It's incorporated with the advisement that there's no dispute that Deputy Brown read to Mr. Gallo and that Mr. Gallo signed, and Deputy Brown asked if he understood it. And the advisement said, hey, there could be nobody involved in this incident in this lineup, so don't feel like you have to pick anybody. And doing your best is just, in this context, do your best as the advisement tells you and as I told you, in which Deputy Brown is saying that there could be someone here and there couldn't be someone here, but just do your best. And then as for the... As already in the brief, but I'll go over briefly, the People v. Carlos case is distinguishable as in there were a litany of other procedural matters that led the court to say the location of the name in the six-pack, in addition to all these other two or three factors, made the photo identification suggestive. So you're out of time, so thank you very much. Thank you very much. We'll give you one minute of rebuttal if you have anything you want to say. I'm sorry. My hearing isn't the best, so I assume I just have a moment to give my final arguments. All right. You have one minute and 13 seconds. Go ahead. Anyway, in terms of discussing negligence against, we're not talking about negligence. We're talking about the Fourth Amendment. The rules under the Fourth Amendment are very clear. It doesn't have to be something evil. It doesn't – whether it's good faith is not relevant. The question is, are there particular facts and circumstances creating probable cause? So that's all I have unless you have additional questions. Okay. Thank you both very much for your arguments. The case of Cameron v. Brown is submitted.
judges: Tashima, Berzon, Kennelly